1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

JUSTIN E. FAIRFAX,              )    Case 1:22-cv-895
                                )
          Plaintiff,            )
                                )
     v.                         )    Alexandria, Virginia
                                )    December 9, 2022
NEW YORK PUBLIC RADIO,          )    10:25 a.m.
and                             )
WNYC,                           )
                                )
          Defendants.           )
                                )    Pages 1 - 20


   TRANSCRIPT OF DEFENDANT NEW YORK PUBLIC RADIO'S

   MOTION TO DISMISS AND MOTION FOR ATTORNEYS' FEES

                        AND COSTS

        BEFORE THE HONORABLE ANTHONY J. TRENGA

            UNITED STATES DISTRICT COURT JUDGE
```

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

```
 1  APPEARANCES:

 2  FOR PLAINTIFF JUSTIN E. FAIRFAX:

 3       REGINALD HENDERSON, ESQUIRE
         THE HENDERSON LAW FIRM, PLLC
 4       P.O. Box 8243
         Woodbridge, Virginia  22195
 5       (703) 989-3510

 6       THOMAS B. MARTIN, ESQUIRE, PRO HAC VICE
         MARTIN LAW, PLLC
 7       5028 Wisconsin Avenue, N.W., Suite 100
         Washington, D.C.  20016
 8       (202)390-7802

 9  FOR DEFENDANT NEW YORK PUBLIC RADIO:

10       JONATHAN R. TUTTLE, ESQUIRE
         ANDREW M. LEVINE, ESQUIRE, PRO HAC VICE
11       JARED I. KAGAN, ESQUIRE, PRO HAC VICE
         DEBEVOISE & PLIMPTON, LLP
12       802 Pennsylvania Avenue, N.W., Suite 500
         Washington, D.C.  20004
13       (202)383-8000

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE CLERK:  Civil Action 1:22-cv-895, Fairfax
 2   v. New York Public Radio, et al.
 3            Counsel, will you please note your
 4   appearances for the record.
 5            MR. TUTTLE:  Good morning.  Jonathan Tuttle,
 6   Debevoise & Plimpton.  I'm local counsel for New York
 7   Public Radio.
 8            THE COURT:  All right.  Welcome.
 9            MR. TUTTLE:  I'm introducing two of my
10   colleagues, Mr. Kagan and Mr. Levine.  Mr. Kagan will
11   be arguing.
12            THE COURT:  All right.  Welcome.
13            Counsel, would you identify yourself for the
14   record, please.
15            MR. HENDERSON:  Good morning, Your Honor.
16            THE COURT:  Good morning.
17            MR. HENDERSON:  Reggie Henderson, cocounsel
18   for Mr. Fairfax.  Cocounsel Thomas Martin will be
19   arguing the motion in this matter.
20            THE COURT:  All right.  Welcome to you.
21            We're going to get started.  We may need to
22   stop while I deal with a jury that's been deliberating.
23            MR. HENDERSON:  Yes, sir.  Thank you.
24            THE COURT:  I've reviewed the briefing on the
25   motion to dismiss and for attorneys' fees.  I've
```

1  reviewed the pleadings and would be pleased to hear
2  further from counsel.
3             MR. KAGAN:  Good morning, Your Honor.
4             THE COURT:  Good morning.
5             MR. KAGAN:  Jared Kagan of Debevoise &
6  Plimpton on behalf of the defendant, New York Public
7  Radio.
8             THE COURT:  Yes.
9             MR. KAGAN:  Particularly given the
10 plaintiff's opposition in this case does not address
11 the detailed arguments or the authorities cited in our
12 briefs, I'll try to keep my remarks this morning
13 relativity brief.
14            Just like Mr. Fairfax's case against CBS,
15 Mr. Fairfax takes issue here with New York Public
16 Radio's reporting on an issue of public concern for not
17 adopting his narrative -- even though the interview
18 that he complains about here refer to the claims
19 against him as allegations, not facts -- expressly
20 noted his categorical denials of the allegations
21 multiple times, and offered him the opportunity to
22 comment three times, all of which he ignored.
23            The complaint here recycles the same
24 allegations that this Court dismissed against CBS and
25 that the Fourth Circuit affirmed.  We're asking the

1  Court now to dismiss for the same reasons that it
2  dismissed the case against CBS and for additionally
3  independently sufficient reasons.
4           So just like the case in *CBS*, there's no
5  defamatory meaning here.  There's no actual malice, and
6  New York Public Radio is entitled to immunity under
7  Virginia's anti-SLAPP statute.
8           So very briefly, as to defamatory meaning,
9  for the reasons I just mentioned, no reasonable
10 listener would understand the interview at issue when
11 it's analyzed in its entirety in context, which is how
12 it has to be analyzed to convey any defamatory meaning.
13          As to actual malice, there's not a single
14 nonconclusory factual allegation that New York Public
15 Radio disseminated the interview with a high degree of
16 awareness that any statements were probably false.
17          In addition to the reasons that the Court
18 dismissed the complaint against CBS, the complaint here
19 fails to identify with specificity the particular
20 statements that are allegedly defamatory as the law
21 requires.
22          And it fails to allege any harm that was
23 purportedly caused by New York Public Radio.  All of
24 the harm that's alleged was caused by CBS in the
25 complaint.

1            As to specificity, the complaint lists or
2   recites nearly the entirety of the interview, a
3   thousand words, and says that each of these expressed
4   and implied statements is false and defamatory.  It
5   doesn't identify which specific statements are false
6   and defamatory.
7            And much of the interview had nothing to do
8   with Mr. Fairfax.  It was about New York's governor,
9   Andrew Cuomo.  It talked about the treatment of
10  African-American women generally and really had nothing
11  to do with Mr. Fairfax.
12           So the failure to identify which specific
13  statements are claimed to be defamatory is fatal to the
14  complaint here.
15           Additionally, the complaint doesn't allege
16  any harm that was caused by New York Public Radio.  I
17  would commend Your Honor to paragraph 50 of the
18  complaint, which really lays it out.  It says, "As a
19  result of CBS's reckless airing of the false and
20  defamatory statements, Justin Fairfax is now falsely
21  labeled a rapist, predator, and sexual abuser."
22           It goes on to say in the same paragraph,
23  "CBS's actions have exposed millions of people to lies
24  that have done extraordinary damage to his reputation
25  and his ability to earn a living."

1           Finally, it goes on, again in the same
2    paragraph, "This harm is a direct and proximate result
3    of the intentional and reckless publishing and
4    propagation by CBS of patently false allegations by
5    Watson and Tyson of rape and sexual abuse."
6           Your Honor, CBS is not a party in this
7    lawsuit; New York Public Radio is.  It's simply
8    implausible to find anything in the complaint that
9    alleges that New York Public Radio caused Mr. Fairfax
10   any harm.
11          Of particular note, the allegations of
12   Ms. Tyson and Ms. Watson that were -- that Mr. Fairfax
13   complains about were repeated by the news media many
14   times between the time of the 2019 CBS interview and
15   New York Public Radio's interview in August 2021, and a
16   number of those articles are detailed at pages 5 to 6
17   of our opening brief.
18          And so for all of these reasons and as
19   detailed further in our brief, we're asking the Court
20   to dismiss the complaint in its entirety with
21   prejudice.
22          We're also asking the Court to award New York
23   Public Radio its attorneys' fees and costs under the
24   Virginia anti-SLAPP statute for having to defend
25   against this meritless case and to deter Mr. Fairfax

1  from bringing a third claim -- this is the second time
2  that a claim like this has been brought -- and to deter
3  him from bringing a third claim against another media
4  organization in an effort to chill protected speech.
5         Now, as a result of this Court's decision in
6  the *CBS* case and the Fourth Circuit's decision
7  affirming that dismissal, Mr. Fairfax was on notice
8  that his claims lacked merit; yet, he brought this
9  literally recycled claim anyway.  He repeated 182
10 paragraphs verbatim from the *CBS* complaint in this
11 complaint that the Court already dismissed.
12        I would respectfully submit, Your Honor, that
13 plaintiff's conduct in this case evinces an improper
14 motive to bully a nonprofit media organization.
15        On the eve of the expiration of the statute
16 of limitations, Mr. Fairfax sent a letter to New York
17 Public Radio demanding that it retract the interview
18 and demanded a response by the next day.  And when New
19 York Public Radio did not accede to his demands, he
20 filed this lawsuit and, as I mentioned, didn't even
21 attempt to distinguish the facts here from the facts
22 and the allegations that the Court dismissed in the *CBS*
23 case.
24        And despite offering Mr. Fairfax three
25 opportunities to provide a statement to New York Public

1  Radio that it would publish, Mr. Fairfax refused
2  without any explanation.  New York Public Radio reached
3  out before the interview was broadcast.  In the
4  interview itself, he had noted that if Mr. Fairfax
5  provided a statement, New York Public Radio would
6  publish it.
7           And in this past August's response to
8  Mr. Fairfax's demand letter, it, again, offered
9  Mr. Fairfax to provide a comment that New York Public
10 Radio would publish.  Mr. Fairfax without any
11 explanation didn't respond, just ignored those offers.
12          And so we also believe that the manner in
13 which this case has been litigated supports an award of
14 fees and really underscores further why the allegations
15 are meritless.
16          First, as I noted a moment ago, the complaint
17 in the case doesn't even attempt to address the fatal
18 deficiencies from the *CBS* complaint.  In addition to
19 copying 182 paragraphs verbatim from that complaint,
20 the complaint here includes no fewer than 78 paragraphs
21 that address the purported actual malice of CBS, who,
22 again, is not even a party in this case.  Whatever
23 state of mind CBS had is utterly irrelevant to this
24 case.
25          Second, as I noted earlier, Mr. Fairfax's

1  opposition brief ignores almost entirely the arguments
2  and the authorities that New York Public Radio cited in
3  its 27-page memorandum of law in support of its motion
4  to dismiss.
5           Mr. Fairfax erroneously argued that New York
6  Public Radio submitted only a two-page motion when that
7  plainly is not true.  And when New York Public Radio
8  brought that misrepresentation to Mr. Fairfax's
9  attention and offered him an opportunity to submit a
10 new opposition that actually addressed the arguments,
11 Mr. Fairfax didn't even bother to respond.
12          And, thirdly, Mr. Fairfax has named a
13 defendant in this case, WNYC, which is a nonexistent
14 entity.  And when he was informed of that fact, he did
15 not amend the complaint.  WNYC, a nonexistent entity,
16 is still named as a defendant in this case.
17          So we would submit, Your Honor, that an award
18 of fees is desperately needed here to deter this
19 conduct from happening again in the future, to deter
20 Mr. Fairfax from suing a third media organization on
21 these same allegations.
22          So unless Your Honor has any questions, I'll
23 turn it over to my colleague.
24          THE COURT:  All right.  Thank you.
25          MR. KAGAN:  Thank you.

 1          THE COURT:  Counsel, we're going to take up
 2   the case that I mentioned.  We have a jury pending.  So
 3   why don't we recess on this case.  I'll probably be
 4   about 20 minutes, and then we'll pick up with your
 5   argument.
 6          MR. MARTIN:  I understand.
 7          THE COURT:  Thank you.  Counsel is excused.
 8       (Recess from 10:35 a.m. until 10:52 a.m.)
 9          THE COURT:  All right.  We're back on *Fairfax*
10   *v. New York Public Radio.*
11          Counsel.
12          MR. MARTIN:  Good morning, Your Honor.
13   Thomas Martin of behalf of the plaintiff.
14          THE COURT:  Yes.
15          MR. MARTIN:  Your Honor, the Court should
16   deny defendant's motion for several reasons.  First,
17   plaintiff plausibly pleads facts satisfying every
18   element for a successful defamation claim under
19   Virginia law.
20          THE COURT:  The question I have is we have
21   the transcript.  We also have the audio of the entire
22   broadcast.  What specific statements in that broadcast
23   do you contend had defamatory meaning?
24          MR. MARTIN:  Well, Your Honor, I mean, the
25   context as a whole alleges that Mr. Fairfax was a

Case 1:22-cv-00895-AJT-IDD   Document 36   Filed 12/27/22   Page 12 of 20 PageID# 529

12

```
 1  rapist on multiple occasions.
 2              THE COURT:  Well, it states that that's what
 3  the person being interviewed had alleged.  Is that what
 4  you're relying on, simply the fact that the person
 5  being interviewed had alleged that Mr. Fairfax had
 6  engaged in this conduct?
 7              MR. MARTIN:  Well, Your Honor, we're relying
 8  on more than that.  It's not only that.  It's the
 9  fact -- what distinguishes this case from CBS is the
10  fact that two-and-a-half years later so many more facts
11  have come out -- so much more exculpatory evidence has
12  come out.
13              Specifically, in CBS, Lee Levine of Ballard
14  Spahr made a key point.  He said, "In any event, Your
15  Honor, I will concede to you that if Fairfax's
16  spokesperson had said, 'I'm going to give you the name
17  and telephone number of somebody who was an eyewitness
18  to one of these alleged sexual assaults who was there
19  the entire time and will tell you that it didn't
20  happen," if CBS didn't follow up on that, that's
21  probably a plausible allegation of actual malice.
22              THE COURT:  Have you alleged that Mr. Fairfax
23  provided that to New York Public Radio?
24              MR. MARTIN:  We have alleged that it's the
25  public domain.  In Mr. Fairfax's pleadings, as well as
```

```
 1  in numerous news sources, there's the name of Dhamian
 2  Blue, who was a witness to one of the alleged sexual
 3  assaults.
 4              THE COURT:  Well, they contacted him for
 5  comment, and he didn't provide any information.  Is
 6  that accurate?
 7              MR. MARTIN:  I do not know that to be
 8  accurate, Your Honor.
 9              THE COURT:  In any event, you've not alleged
10  that he provided any of that information to New York
11  Public Radio, correct?
12              MR. MARTIN:  He did not provide it directly
13  to New York Public Radio, but Your Honor --
14              THE COURT:  And the broadcast said that he
15  denied all of these allegations, correct?
16              MR. MARTIN:  It did say that, Your Honor.
17              THE COURT:  All right.  Other than what you
18  say is the context as a whole and this failure to
19  conduct its own investigation or to gather whatever
20  information was available, are there any specific
21  statements in this broadcast that you're specifically
22  relying on as defamatory?
23              MR. MARTIN:  Well, several, Your Honor.
24              As far as the statements go, one piece that
25  we are relying on is how New York Public Radio actually
```

 1  adopted the statements, and we can give two instances.
 2          THE COURT:  All right.
 3          MR. MARTIN:  One is where Melissa
 4  Harris-Perry at one point said, "Are you angry, or am I
 5  just mad on your behalf," thus adopting the statement
 6  of --
 7          THE COURT:  I'm sorry.  I'm trying to find
 8  where that is.  Where in the broadcast is that?
 9          MR. MARTIN:  Oh, Your Honor, I'm sorry.
10  That's a tweet.  That's not in the broadcast.  I'm
11  sorry.
12          THE COURT:  All right.
13          MR. MARTIN:  But it's the -- it's Melissa
14  Harris-Perry's adoption of the narrative without
15  questioning or there were no -- she did not make any
16  inquiries about the validity of the statements.  She
17  did not.  New York Public Radio further did not.  They
18  did not make any reference to Mr. Blue.  They did not
19  make any reference to the fact that the false accusers
20  have intentionally avoided any investigation of any
21  kind for the last two-and-a-half years.
22          They did not mention Mr. Fairfax's numerous
23  instances of outreach to the police both in Durham,
24  North Carolina, as well as Boston, Massachusetts.  They
25  did not make mention of Mr. Fairfax's outreach to the

1  media, to law firms, all of which occurred before the
2  New York Public Radio broadcast.
3  　　　　　Your Honor, we believe this is evidence that
4  there was actual malice, there was a reckless disregard
5  for the truth and a purposeful avoidance of the truth.
6  　　　　　As I was saying earlier, Your Honor,
7  Mr. Levine conceded that if CBS didn't follow up on
8  that, those others sources, that's probably a plausible
9  allegation of actual malice.  In this case, it
10 definitely is evidence of malice, actual malice because
11 there was that lack of any follow-up.
12 　　　　　THE COURT:  All right.
13 　　　　　MR. MARTIN:  Counsel spoke about damages as
14 well.  In this particular case, by calling Mr. Fairfax
15 a rapist, the statements were defamatory *per se*, and
16 damages need not be proven.  But as well, the NYPR's
17 defamatory statements were also gratuitous and damaging
18 because they came out just as Mr. Fairfax's lieutenant
19 governorship -- his term was ending.  He was looking to
20 return to the practice of law where he was trying to
21 reintegrate into the legal community here in the
22 District of Columbia.  And when the broadcast came out
23 at the end of his term, it defamed him in the very
24 market where he was looking to work.
25 　　　　　THE COURT:  You're talking about the *CBS*

1  report?

2              MR. MARTIN:  No.  I'm talking about New York
3  Public Radio's broadcast.  And the effect on
4  Mr. Fairfax has been that as of today, he's still not
5  employed.

6              Your Honor, in conclusion, Your Honor must
7  allow this case to continue to discovery.  To not allow
8  this case to move forward would contradict your
9  decision in *Fairfax v. CBS* and leave other similarly
10 defamed individuals with no recourse when they have
11 been defamed.  Leaving them to perpetual defamation,
12 even when there's substantial exonerating evidence,
13 would be a complete injustice.  Time has allowed much
14 more evidence to be publicly revealed since the *CBS*
15 case.

16             THE COURT:  Has he brought claims against the
17 two women that have made these allegations?

18             MR. MARTIN:  He has not, Your Honor.

19             THE COURT:  All right.

20             MR. MARTIN:  Time has allowed much more
21 evidence to be publicly revealed since the *CBS* case,
22 which happened in the heat of the MeToo movement.  Now
23 there's a wealth of evidence of Mr. Fairfax's
24 innocence, and New York Public Radio, to use legal
25 means words, never followed up on it.  We have

1  sufficiently pled every element of defamation,
2  including actual malice, and we ask this Court to allow
3  us to engage in discovery to prove our case.
4      THE COURT:  All right.  Thank you.
5      Do you want to say anything in response to
6  their motion for attorneys' fees?
7      MR. MARTIN:  Your Honor, they absolutely must
8  be denied.  Mr. Fairfax is fighting for his good name,
9  and the reason -- so much has come out in the last
10 two-and-a-half years.  It's as if -- if you award
11 attorneys' fees or you find for the defendant, how is
12 one to get their good name back?  Mr. Fairfax used so
13 much of the *CBS* complaint -- the *CBS* material in his
14 complaint because this Court in the *CBS* case laid out a
15 blueprint for what would constitute defamation.
16     And New York Public Radio is actually -- this
17 case is actually the opposite of *CBS* because they
18 ignored what this case -- what the Court laid out in
19 its holding in *CBS*.
20     THE COURT:  All right.  Thank you.
21     Counsel, anything further?
22     MR. KAGAN:  Very briefly, Your Honor.
23     So I'm puzzled by the continued reliance on
24 what CBS's counsel said in that case.  As Your Honor
25 noted, what CBS's counsel said -- that if Mr. Fairfax

1  provided this information to CBS and CBS didn't follow
2  up, that could be evidence of actual malice or an
3  allegation of actual malice.  There's no dispute here
4  that Mr. Fairfax never provided New York Public Radio
5  any information.  Three times he was offered that
6  opportunity.  If he wanted to clear his name or get his
7  narrative out, he should've provided a comment, and New
8  York Public Radio would have published that.  That was
9  never done.  And so the continued reference to
10 Mr. Levine's statement in *CBS* is completely inapposite
11 and irrelevant here.
12         My colleague here referred to a tweet that
13 Ms. Perry made.  That's not part of the broadcast, and
14 that's not alleged anywhere in this complaint to be
15 defamatory.  What's alleged to be defamatory, without
16 identifying what is actually defamatory, is the
17 broadcast.
18       (Reporter clarification.)
19         MR. KAGAN:  The tweet is not alleged anywhere
20 in the complaint to be defamatory.
21         And my colleague referred to all of this
22 evidence that has come out in the last several years.
23 There is no plausible allegation in the complaint that
24 New York Public Radio had knowledge of that.  In order
25 to plead actual malice, the defendant -- or the

1  plaintiff rather needs to plead facts, not conclusory
2  allegations, that the defendant subjectively knew that
3  the information was false or that it was subjectively
4  false or that the defendant had a high degree of
5  awareness that Mr. Fairfax likely did not sexually
6  assault Ms. Tyson or Ms. Watson.
7           There's no reason to doubt the veracity of
8  these women, as the Court said in the *CBS* case.  There
9  are two accounts of sexual assault.  Mr. Fairfax
10 admitted that he had sexual encounters with both women.
11 There's no allegation that New York Public Radio
12 believed that anything that it was saying was false.
13 Moreover, it said multiple times in the broadcast that
14 Mr. Fairfax denies these allegations.
15          So, Your Honor, for the reasons that we've
16 already explained, we would ask that the Court dismiss
17 the case and award attorneys' fees.
18          THE COURT:  All right.  Thank you.
19          The Court will take it under advisement.
20 I'll get a decision to you shortly.
21          MR. KAGAN:  Your Honor, can I just ask?  We
22 have a pretrial conference on December 28 and a
23 discovery plan due on December 21.  Should we proceed
24 with that?
25          THE COURT:  Yes.

```
1            MR. KAGAN:  Thank you.
2            THE COURT:  All right.  Thank you.
3       Counsel is excused.
4       -----------------------------------
              Time:  11:04 a.m.
5
```

I certify that the foregoing is a true and
accurate transcription of my stenographic notes.

                                           /s/
                                Rhonda F. Montgomery, CCR, RPR