IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUSTIN FAIRFAX,                    )
            Plaintiff,             )
                                   )
v.                                 )      Criminal Case No. 1:22-cv-895 (AJT/IDD)
                                   )
NEW YORK PUBLIC RADIO              )
                                   )
            Defendant.             )
_____)

## **ORDER**

Plaintiff Justin Fairfax alleges that Defendant New York Public Radio ("NYPR") defamed him during a broadcasted radio interview. In response to the Complaint, filed on August 6, 2022, [Doc. No. 1], NYPR has filed a Motion to Dismiss [Doc. No. 20] and a Motion for Attorney's Fees [Doc. No. 23]. A hearing was held on December 9, 2022, following which the Court took the Motions under advisement. Upon consideration of the Motions, the memoranda in support thereof and in opposition thereto, the argument of counsel at the hearing and for the reasons stated herein, the Defendant's Motion to Dismiss and Motion for Attorney's Fees are both GRANTED.

### I. Introduction

NYPR is a New York corporation with its principal place of business in New York, New York. [Doc. No. 1] at 36 ¶ 54. Plaintiff Justin Fairfax, a citizen of Virginia, is the Commonwealth's former Lieutenant Governor. [Doc. No. 1] at 34 ¶ 52.

On August 6, 2021, NYPR aired a radio show named "The Takeaway" on the topic of "Politics, Power and Abuse" that featured a conversation between Vanessa Tyson, a professor of political science, and the show's host, Melissa Harris-Perry ("the Broadcast"). The Broadcast discussed the reactions to women who make allegations of sexual misconduct against individuals

1

with political power and centered in part on the then-recent allegations against former New York Governor Andrew Cuomo.[1] *Id.* at 152. In 2019, Tyson had alleged on a national television show, broadcast by CBS, that Fairfax had sexually assaulted her in 2004 at the Democratic National Convention. During the NYPR Broadcast, Harris-Perry referenced, and Tyson repeated her claim that Fairfax had sexually assaulted her at the 2004 Democratic National Convention, as context

---

[1] Harris-Perry opened the Broadcast as follows:

> **Melissa Harris-Perry:** This is *The Takeaway*, I'm Melissa Harris-Perry. On June 8th, Terry McAuliffe won the democratic primary for Virginia's open gubernatorial seat. In a distant fifth place with less than 4% of the vote was Justin Fairfax, the state's current Lieutenant Governor. It's a stark turnaround of electoral outcomes for Fairfax. Just four years ago when he ran for Lieutenant Governor, Fairfax won the endorsement of The Washington Post who described him as, "A bright, competent, well-versed former federal prosecutor turned corporate attorney."
>
> Indeed, in 2019, Fairfax nearly ascended to the top spot in the Commonwealth. When Governor Ralph Northam became embroiled in racial scandal after his 1984 medical school yearbook photo was unearthed, showing Northam dressed either in blackface or as a member of the KKK. Northam said he could not remember which of the two races [sic] costumes he'd worn that night. In language similar to what we heard this week as party leaders call for Cuomo to step down, Democrats demanded Northam's resignation. *This is* what it sounded like in February 2019.
>
> **Democrat:** He's lost the authority to govern. He has to resign. It's in the best interest of the Commonwealth, it's in the best interest of the party.
>
> **Democrat:** The good news is though, is that there is a zero-tolerance and people do understand, and he needs to resign immediately to stop the pain in Virginia, and frankly around the nation.
>
> **Democrat:** The Governor of Virginia should resign. It's completely unacceptable. I'm sure he's lost the confidence of the people of Virginia and I've been very clear.
>
> **Melissa Harris-Perry:** As pressure mounted, it seemed that Northam was out and that he would be replaced by the young African-American Lieutenant Governor, Justin Fairfax. It wasn't [sic] that context when the nation met someone I have known for decades.
>
> **Participant:** Vanessa Tyson is her name. She says that Lieutenant Governor, Justin Fairfax assaulted her in 2004. Now he categorically denies these allegations.
>
> **Melissa Harris-Perry:** Vanessa Tyson is a professor of political science at Scripps College in Southern California. I first met Vanessa more than 20 years ago. Having graduated from Princeton University with an award-winning senior thesis, she came to the University of Chicago to earn a PhD. in political science. I just began working as an assistant professor in the department at UChicago.
>
> Vanessa's keen intellect, generosity of spirit, and deep commitment to racial and gender justice were readily apparent. This week, she sat down with me here on *The Takeaway* to discuss the news about Governor Andrew Cuomo, and to reflect of her own very public journey over the past several years. I asked how she felt when she first learned about the New York Attorney General's report detailing Governor Cuomo's pattern of sexually harassing women with whom he worked.

*The Takeaway*, New York Public Radio, https://www.wnycstudios.org/podcasts/takeaway/segments/politics-power-abuse-and-accountability (last visited March 30, 2023) (the entire recording of the show and a transcript of the interview are maintained online). A transcript of the NYPR broadcast is also attached to the Memorandum in Support of the Motion to Dismiss. [Doc. No. 21-15]. The Plaintiff has not challenged the integrity of this document and the broadcasted interview is referred to in and is integral to the Complaint. The Court has therefore considered the Broadcast in its entirety, even though the Complaint omits portions of the Broadcast that reference Fairfax. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (a district court may consider public information that is "integral to and explicitly relied on in the complaint.")

for a discussion about how such allegations are treated by the media and the political establishment. *Id.* at 59. Also broadcast during that NYPR radio show was a short, recorded audio clip from Meredith Watson, another woman who accused Fairfax of sexual assault during the 2019 CBS broadcast, in which she expressed how she felt about Fairfax's alleged conduct. *See* [Doc. No. 21-5] at 3.

Based on the August 6 NYPR Broadcast, Fairfax has filed a two-count complaint against NYPR alleging defamation and intentional infliction of emotional distress. In support of the defamation claim, the Complaint alleges that NYPR failed to investigate Tyson and Watson's allegations made on the Broadcast. *Id.* at 63-64 ¶ 160. More specifically, Fairfax alleges that NYPR did not speak with or mention a publicly identified witness who Fairfax claims observed his entire sexual encounter with Watson in 2000 and who would confirm that the encounter was consensual. *Id.* at 4. Fairfax also alleges that NYPR should have discussed a Washington Post editorial piece that detailed the steps Fairfax has taken to attempt to clear his name, such as taking and passing polygraph tests, and that NYPR further failed to reach out to Fairfax in a "reasonable amount of time" prior to the broadcast of the radio show, although the Complaint also states that Fairfax was contacted one day before the show and did not take the opportunity to comment. *Id.* at 71.

NYPR has moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and the immunity conferred under Virginia's anti-SLAPP[2] statute, Va. Code §8.01-223.2. [Doc. No. 20]. It also seeks attorney's fees pursuant to the anti-SLAPP statute. [Doc. No. 23].

---

[2] SLAPP is an anagram that stands for "strategic lawsuit against public participation."

## II. Legal Standard

Under Rule 12(b)(6), a complaint "must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted." *Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). In addressing a Rule 12(b)(6) motion, a court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the plaintiff. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009). However, to survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Dismissal of a complaint is appropriate when the "well-plead facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the well pled facts within a complaint are considered by the Court to be true, legal conclusions are not afforded the same presumption. *Id*. at 678.

## III. Discussion

### A. Defamation

A claim for defamation under Virginia law[3] "must plead three elements: (1) publication of (2) an actionable statement with (3) the requisite intent." *Lokhova v. Halper*, 995 F.3d 134, 145

---

[3] The Complaint does not identify the governing state law applicable to the defamation claim. *See* [Doc. No. 1] at 107. However, Fairfax references Virginia law as applicable to his claim in his response to the Defendant's Motion, *see* [Doc. No. 26] at 4, even though under Virginia's choice of law rules, a defamation claim is governed by the law where the defamatory statement was published. *See also Lapkoff v. Wilks*, 969 F.2d 78, 81 (4th Cir. 1992) (holding that under the Virginia choice of law test, the state law where the defamatory statement was made governs a defamation claim). In any event, the choice of state law is immaterial to the defamation claim as that claim will be dismissed on First Amendment grounds. While the Court will consider the intentional infliction of emotional distress claim under Virginia law, the dismissal of that tort claim is dictated by its First Amendment based ruling on the defamation claim.

(4th Cir. 2021) (quoting *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018)). An actionable statement is both false and defamatory. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). At the motion to dismiss stage, all alleged defamatory remarks are considered false, but a district court must still consider if the remarks are otherwise actionable. *Lokhova*, 995 F.3d at 145 (quoting *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 659 (E.D. Va. 2015) (citing *Chapin*, 993 F.2d at 1092)). Additionally, in a case such as this where the Plaintiff is a public figure, the Complaint must state facts that plausibly allege that the purportedly defamatory remarks were made with "actual malice." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) (hereinafter "*CBS II*"). "Actual malice is a legal term of art; in this context, it does not mean ill will or intent to injure but rather that the defendant made the defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (internal quotation marks omitted) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)). The standard requires "much more than a failure to exercise ordinary care" and "[r]ecklessness is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *CBS II*, 2 F.4th at 293 (citations omitted).

The Complaint does not allege with specificity the defamatory statements made by NYPR, as required by Virginia law. *See Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (Va. 2003). However, Plaintiff's defamation claim appears to be based on the Broadcast's references to his two accusers' past accusations that they had been sexually assaulted by Fairfax. *See* [Doc. No. 1] at 1 ¶ 1 (alleging that Tyson's and Watson's accusations were "published, republished, repeated, endorsed and presented as fact – both expressly and in context"). In determining whether these references are actionable, the statements must be considered by the Court in their entirety. *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (citations omitted).

5

The Complaint fails to allege facts that make plausible that the host of the Broadcast, Harris-Perry, stated or broadcast anything that would constitute an actionable statement by NYPR. The context for the relied upon references was "the news about Governor Andrew Cuomo, and to reflect on [Tyson's] own very public journey over the past several years." *See* [Doc. No. 21-15] at 2. The Complaint itself makes clear that these allegations of sexual assault had previously been raised against Fairfax. The show's reference to his accusers' claims does not discuss the details of those accusations or endorse the veracity of those claims and was followed immediately by clear statements that Fairfax categorically denied the allegations. In sum, the Broadcast conveyed only the undisputed fact that Tyson and Watson made sexual abuse allegations against Fairfax and that Fairfax had categorically denied the allegations, without any opinion or suggestion by Harris-Perry that the allegations were true. For these reasons, the Complaint fails to sufficiently allege that anything said by Harris-Perry constituted actionable factual and defamatory statements. *See Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (holding a report on an accusation of rape against the former Governor of South Dakota was not actionable as libel because the statements were true and did not imply that the governor committed the crime he was accused of), *reheard on other grounds*, 788 F.2d 1300 (8th Cir. 1986) (en banc) *cert. denied*, 479 U.S. 883 (1986)[4]; *Dangerfield v. Wavy Broad., LLC* 228 F. Supp. 3d 696, 703, 704 (E.D. Va. 2017) (dismissing libel claims because the relied upon statement that the plaintiff had been accused of rape was "substantially accurate")[5]; *see also Moore v. Lowe*, 591 F. Supp. 3d 1087, 1100 (N.D. Ala 2022) (dismissing claims because the statement that the plaintiff had "been credibly accused

---

[4] The Eighth Circuit further explained that "[t]o the extent the publication of the rape allegation has caused harm to Janklow's reputation, this harm is the result of a materially accurate report of historical fact, not of an assertion by Newsweek that Janklow committed the alleged crime." *Janklow*, 759 F.2d at 649.

[5] The district court initially denied a motion to dismiss all the libel claims because the complaint alleged that the defendant stated that the plaintiff had been arrested when the plaintiff had never been arrested. *Dangerfield*, 228 F. Supp. 3d at 705.

of sexual misconduct by multiple women who were just teenagers at the time" was "substantially true").

The factual allegations within the Complaint also fall far short of the demanding standard required to plead that any of the statements broadcast by NYPR were made with actual malice. In that regard, Fairfax does not allege or contend that NYPR knew that Tyson's and Watson's allegations were false but rather that it failed to investigate the truth of his accusers' statements based on publicly available information, failed to point out the inconsistencies in his accusers' past public descriptions of what had happened, and failed to "include in The Broadcast any of the substantial amount of information pointing to Fairfax's innocence and extraordinary efforts to clear his name." [Doc. No. 1] at 70 ¶ 178. In substance, Fairfax alleges that NYPR acted with actual malice because it recklessly proceeded to broadcast his accusers' allegations without conducting any investigation or assessing the truthfulness of his accusers' allegations based on that publicly available information.

The Complaint's rote and conclusory allegations that merely repeat the standards applicable to establishing actual malice,[6] without any particularized facts, are insufficient to plausibly allege actual malice. *See Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 Fed. App'x 234, 240 (4th Cir. 2020) (per curiam) (finding a conclusory allegation "does not constitute a plausible allegation of actual malice"); *Fairfax v. CBS Broad*, 534 F. Supp. 3d 581, 592 (E.D. Va. 2020) (hereinafter "*CBS I*") ("at the pleading stage, 'conclusory allegations' and 'mere

---

[6] *See* [Doc. No. 1] at 14 ¶13 ("At the time of the publication of the The Broadcast, NYPR and Perry published, re-published, endorsed and presented as fact the defamatory express and implied statements by Watson and Tyson with knowledge those statements were false and/or with reckless disregard for their truth. NYPR and Perry also published and re-published those statements with a high degree of awareness of their probable falsity, and they engaged in a purposeful avoidance of the truth concerning exculpatory information serving to establish Fairfax's innocence including the existence of an exonerating witness – Dhamian Blue – involving the fabricated allegation made by Watson, which had been widely reported beginning on July 10, 2019 – more than two years before the The Broadcast.")

recitation[s]' of the actual malice standard – which is ultimately a subjective inquiry  – are insufficient") (citing *Mayfield v. Nat'l Assoc. for Stock Car Racing, Inc.*, 674 F. 3d 369, 378 (4th Cir. 2012)). In that regard, the Complaint fails to allege, as required, facts that show NYPR published the accusers' statements despite possession of actual knowledge that the statement was false or while harboring "a high degree of awareness of probable falsely." *CBS II*, 2 F.4th at 293 (citing *Reuber v. Food Chem. News, Inc.,* 925 F. 2d 703, 714 (4th Cir. 1991) (en banc)); *see also CBS I*, 534 F. Supp. 3d at 592 (a complaint must allege facts or circumstances which taken together "evidence[] that the defendant acted with knowledge of the statements falsity or that it 'entertained serious doubts as to the truth of its publication.'") (citing *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)). That standard requires "much more than a failure to exercise ordinary care" and "recklessness is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *CBS II*, 2 F.4th at 293 (citations omitted). For these reasons, the Complaint's conclusory allegation, that NYPR knew of the purported witness or other relied upon information, even it accepted as a factual allegation, is insufficient to plausibly allege actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) ("Failure to investigate does not in itself establish bad faith.") (citing *New York Times*, 376 U.S. at 287-288); *see also Blankenship v. NBC Universal, LLC*, 2023 U.S. App. LEXIS 4112 at *27-28 (4th Cir. February 22, 2023) ("Doocy's remark and the briefing packet might well permit a finding that a reasonable person in Cavuto's position *should have known* Blankenship was convicted of a misdemeanor, but actual malice requires 'much more' than mere negligence.") (emphasis in original) (quoting *Hatfill v. New York Times Co.*, 532 F.3d 312, 325 (4th Cir. 2008)).[7]

---

[7] In support of his contention that actual malice has been adequately alleged, Plaintiff contends that the Fourth Circuit decision in *CBS II* recognized that a Complaint that alleges that a defendant that fails to interview a potentially exonerating eyewitness also sufficiently alleges actual knowledge of a false statement or reckless disregard of whether or not it was false. But the Fourth Circuit's decision cannot be reasonably read to suggest that the mere existence of

Nor were NYPR and Perry obligated to include a detailed presentation of the "substantial information pointing to Fairfax's innocence and extraordinary efforts to clear his name."[8] *See e.g.*, *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974) (holding that a law which penalized newspapers for failure to publish particular content was an intrusion on the freedom of the press and thus ran afoul of the First Amendment); *Janklow*, 759 F.2d at 648 (holding publisher's omission of certain details, such as a polygraph test and a lack of corroboration of a rape accusation, did not make the statement actionable). In sum, the factual allegations of the Complaint arguably allege, at best, a plausible negligent failure to investigate, not "the purposeful avoidance of the truth." *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 692 (1989). For these reasons, Fairfax has failed to allege facts that make plausible that NYPR broadcast Tyson and Watson's allegations of sexual assault with actual malice.[9]

For the above reasons, Fairfax has not pled facts that plausibly allege that New York Public Radio defamed him.

---

publicly available information or a failure to interview an eyewitness sufficiently alleges actual malice, particularly where, as here, in contrast to *CBS I*, Fairfax never provided the name of that witness when given the opportunity to do so.

[8] The Court notes that the information Fairfax points to would not resolve whether or not his accusers' claims were true or false.

[9] Nor does the Supreme Court's decision in *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (1989), referenced by the Fourth Circuit in *CBS II*, and relied upon by Fairfax, support Fairfax' position that the Complaint adequately alleges actual malice. In that case, the defamed public figure had provided recorded audio tapes of a third-party witness to the defendant. *Id.* at 692 ("It is also undisputed that [plaintiff] made the tapes of the [witness] interview available to the Journal News and that no one at the newspaper took the time to listen to them.") These recordings also partially contradicted the substance of the disputed remarks in the case. *Id.* at 683-684 ("[O]ne might reasonably infer in light of this broader context that the decision not to listen to the tapes was motivated by a concern that they would raise additional doubts concerning [the third-party accuser's] veracity.") The journalists in *Harte-Hanks* had also been instructed to interview everyone who was a key witness in the case but failed to interview an eyewitness who was known to the journalists. *Id.* at 692. The Supreme Court was satisfied that the totality of these facts sufficiently demonstrated "a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the defamatory allegations. *Id.* Here, there is no allegation that Fairfax informed New York Public Radio about the third-party witness, nor has Fairfax made other factual allegations from which to reasonably infer that NYPR knew the allegations of sexual misconduct were false or that NYPR recklessly disregarded whether or not the allegations were false. In fact, unlike the plaintiff in *Harte-Hanks*, the Complaint makes clear that Fairfax did not communicate *any* information to NYPR about any eyewitness or his accusers, even though he was asked to comment before the broadcast. *See* [Doc. No. 1] at 7.

*B. Intentional Infliction of Emotional Distress*

Pursuant to the protections provided by the First Amendment, the Supreme Court has recognized that in the absence of actual malice, allegedly defamatory statements cannot form the basis of a claim for intentional infliction of emotional distress. *Hustler Magazine v. Falwell*, 485 U.S. 46, 57 (1988) (holding a lude caricature of a public figure could not sustain a claim for intentional infliction of emotional distress); *see also CBS II*, 2 F.4th at 296 (holding that the failure to plead actual malice indicated that a claim for intentional infliction of emotional distress should be dismissed). Accordingly, Fairfax's claim for intentional infliction of emotional distress must be dismissed.

*C. The Virginia Anti-SLAPP Statute and Attorney's Fees*

New York Public Radio has filed a Motion for Attorney's Fees pursuant to Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2. [Doc. No. 23].

The anti-SLAPP law was enacted for the purposes of protecting free speech. Specifically, it provides immunity for a person who made statements "regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party." Va. Code § 8.01-223.2(a). At its core, the Virginia anti-SLAPP statute is intended to ensure that Virginia courts are not used to silence political discourse protected by the First Amendment, to "protect[] the public interest in a free flow of information to the people concerning public officials," and to "protect against self-censorship." *CBS II*, 2 F.4th 286, 292 (4th Cir. 2021) (citations omitted); *see also ABLV Bank, AS v. Ctr. For Advanced Def. Studies Inc.*, 2015 U.S. Dist. LEXIS 181218 at *4 (E.D. Va. Apr. 21, 2015) ("A SLAPP is a meritless civil action, intended to force upon a political opponent the high cost of

defending against a lawsuit.") If a civil suit is dismissed based on this immunity, a defendant "may be awarded reasonable attorney fees and costs." Va. Code § 8.01-223.2(b).

As discussed above, Fairfax has not adequately pled that NYPR either made an actionable statement or acted with actual malice. The radio program also unquestionably pertained to a matter of public concern—how allegations of sexual assault are treated when made against persons in positions of power (such as public officials). NYPR's broadcast is therefore protected by the First Amendment and protected by the statutory immunity established pursuant to Va. Code §8.01-223.2. The Court may therefore, in its discretion, award attorney's fees to NYPR.[10] *See CBS II*, 2 F.4th at 296-297 (holding the inclusion of the word 'may' in the statute indicates that a district court had discretion to award fees under subsection (b)).

The Supreme Court of Virginia has not yet interpreted the attorney's fees provision of the anti-SLAPP statute. Nevertheless, as with other fee shifting statutes, the Court will assess whether to award fees under the anti-SLAPP statute based on the general purposes of the statute. *See Ohio River Valley Envtl. Coalition, Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 416 (2007) (stating that under Title VII attorney's fee statutes, "the discretion to award fees is guided by the 'large objectives' of the underlying substantive provisions in a statute") (quoting *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 759 (1989)). In *CBS I*, in determining whether to award attorney's fees based on the general purposes of the statute, the Court considered whether (1) the allegations were "groundless, frivolous, or unreasonable"[11]; (2) the Complaint presented a cogent

---

[10] The Court also does not find that the substantive provisions of the Virginia statute conflict with any federal procedural rules, as courts in other districts have with respect to their forum state's anti-SLAPP statutes. *Cf., Fairbanks v. Roller*, 314 F. Supp. 3d 85, 95 (D.D.C. 2018) (explaining the interaction between the Washington, D.C. statute with Federal Rules of Civil Procedure 12 and 56).

[11] In assessing the proper application of Virginia anti-SLAPP statute, the Court found relevant those considerations pertaining to an award of attorney's fees under Title VII, 42 USC §1988(b). Like the anti-SLAPP statute, §1988 was enacted in part "to protect defendants from burdensome litigations having no legal or factual basis." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978)). "Accordingly, §1988

legal theory; (3) the action was demonstrably filed with an improper motive; and (4) if there was an imbalance of resources between the two parties. *CBS I*, 534 F. Supp. 3d at 601-602.[12] Other Virginia federal district courts have looked to whether the claims for defamation are meritless. *See, e.g., Flanagan v. Pittsylvania Cty.*, 2020 U.S. Dist. LEXIS 92320 at *30 n.6 (W.D. Va. May 27, 2020) (denying attorney's fees when a claim had some merit). For these reasons, the Court has considered whether the merits of this action are sufficient to justify the impact on those important liberty interests afforded protection under the anti-SLAPP statute.

Although the Court dismissed Fairfax's claim in *CBS I* without an award of attorney's fees against him under Virginia's anti-SLAPP statue, as requested by CBS and affirmed by the Fourth Circuit, Fairfax faces the issue of attorney's fees in this case in a very different posture than he did in *CBS I*. First, this action was filed after the Fourth Circuit[13] made explicitly clear what Fairfax as a public figure was required to plausibly allege with factual support; and despite that recent, detailed explanation, the Complaint did nothing other than engage in conclusory allegations that were  clearly inadequate under the standard laid out in *CBS II*. Indeed, the Complaint's allegations with respect to actual malice against NYPR were far more conclusory, unsupported and deficient than those found inadequate in *CBS I*.[14] For example, the NYPR broadcast contains none of the

---

authorizes a district court to award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.*

[12] In assessing whether to award attorney's fees based on these considerations, the Court finds support in the Fourth Circuit holding that the Court did not abuse its discretion in denying CBS' request for attorney's fees. *CBS II*, 2 F.4th at 297.

[13] In *CBS II*, the Fourth Circuit explicitly laid out the requisite standard to plead actual malice:

> A plaintiff must prove that the defendant published the statement despite actually knowing it was false or harboring a high degree of awareness of probable falsity. This standard requires much more than a failure to exercise ordinary care. Recklessness is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. Rather, a plaintiff must prove that the defendant in fact entertained serious doubts as to the truth of his publication.

*CBS II*, 2 F.4th at 293 (alterations, internal citations, and quotation marks omitted).

[14] For example, in *CBS I*, the Court found inadequate Fairfax' contentions that he had adequately alleged actual malice because "... (1) CBS failed to investigate Tyson's and Watson's allegations; (2) CBS relied on a single, unreliable source for each interview (namely, Tyson and Watson); (3) CBS violated applicable journalistic standards ['by publishing "sensational and highly damaging accusations made by Tyson and Watson,"']; (4) CBS was motivated by

12

type of commentary by the host that drove the action against CBS.[15] Likewise absent from his Complaint in this action are any allegations of specific injuries other than those that had already been experienced before the NYPR broadcast. *See* [Doc. No. 1] at 106.

Nor are the allegations in this action comparable to the allegations in *CBS I* that pertained to CBS' state of mind, such as Fairfax's providing a list of witnesses to CBS before the broadcast. Here, the sole basis for Fairfax's claim of actual malice, NYPR's failure to investigate or mention his efforts to refute his accusers' claims based on publicly available information, none of which was provided by Fairfax to NYPR, was clearly rejected as adequate to establish actual malice in *CBS I* and *CBS II* based on long established Supreme Court precedent and settled law (which is cited extensively by the Fourth Circuit). *See St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) ("Failure to investigate does not in itself establish bad faith.") (citing *New York Times*, 376 U.S. at 287-288 (finding the presence of news stories contradicting a disputed advertisement in the publisher's *own files* was not sufficient to demonstrate the publisher's actual malice)). Likewise, *CBS II* made clear that the alleged motives of a broadcast's host, such as Melissa Harris-Perry, do not sufficiently allege actual malice. *See CBS II*, 2 F. 4th at 295 ("Even accepting as true that CBS had a self-serving motive in pursing the story—and accepting that motive can be relevant to the actual malice inquiry—that does not support an inference that CBS seriously doubted the truth of

---

[15] *See CBS I*, 534 F. Supp. 3d at 593 ("Fairfax contends that through these and other statements, CBS *This Morning* co-hosts created at least the defamatory implication that he in fact committed the two sexual assaults, as related by his accusers, largely because these statements essentially vouched for both Watson's and Tyson's credibility and, with respect to Tyson, CBS failed to probe inconsistencies in Tyson's interview.")

its desire to respond publicly and aggressively to the #MeToo movement in light of certain internal controversies at CBS; (5) CBS had a preconceived narrative that Fairfax committed the alleged sexual assaults; (6) CBS failed to challenge Tyson or Watson on basic facts of their stories during the interview itself; and (7) CBS engaged in certain post- publication conduct probative of actual malice." *CBS I*, 534 F. Supp. 3d at 595, 597. The Court also rejected Fairfax's claim that based on these contentions CBS had obvious reasons to doubt Tyson's and Watson's veracity or, at least, deliberately shield itself from the truth. *Id.* at 597. In doing so, the Court cited a long list of cases that had established, *inter alia*, that actual malice cannot be inferred from a failure to investigate, having a political and ideological animus towards a plaintiff, or post-publication conduct. *See generally, Id.* at 596-597.

the women's accusations against Fairfax.") (internal citations omitted); *see also Reuber v. Food Chemicals News, Inc.*, 925 F.2d 703, 716 (4th Cir. 1991) (en banc) ("[M]any publications set out to portray a particular viewpoint to advance a partisan cause. Defamation judgments do not exist to police their objectivity.") In short, Fairfax failed to proffer any cogent fact-based legal theory concerning why NYPR made an actionable statement or acted with actual malice. After the Fourth Circuit's decision in *CBS II*, Fairfax was on clear notice that this action had no prospects for success. *See e.g.*, *Cleveland Demolition Co. v. AzCon Scrap Corp., Div. of Gold Fields American Industries, Inc.*, 827 F.2d 984, 988 (4th Cir. 1987) (affirming Rule 11 sanctions for attorney's fees when the complaint had "absolutely no chance of success under existing precedent." (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985))); *Tresóna Multimedia, LLC v. Burbank High School Vocal Music Ass'n*, 953 F.3d 638, 654 (9th Cir. 2020) (finding sanctions were necessary pursuant to the Copyright Act when "much of this litigation was avoidable from the beginning based on settled law."); *Sofa Entm't, Inc. v. Dodger Prods.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (finding an award of fees were appropriate under the Copyright Act because "[i]n light of the education SOFA received as the plaintiff in *Elvis Presley Enterprises*, SOFA should have known from the outset that the chances of success in this case were slim to none.")

As for his motivation in bringing this action, Fairfax is explicit:

No person – let alone a long time public service elected by a record 1.36 million Virginians to serve all the people of the Commonwealth – should have their rights, reputation, career, livelihood and peace of mind trampled so wantonly and recklessly for so long with no accountability, no remedy and no end in sight. After three and a half years, it is well past time for this unprecedented media-enabled smear campaign to be brought to the light of truth and, at long last, to an end.

14

Fairfax brings this action to restore his reputation and clear his name, ensure the truth prevails, stop the weaponization of false allegations of sexual assault against him and finally vindicate his rights under civil law.

As a Virginia former federal prosecutor, federal law clerk, civil and criminal defense attorney, member in good standing of the Virginia and  District of Columbia Bar Associations and an officer of the court, Fairfax also seeks to finally stop the unethical and extraordinarily destructive practice of allowing private attorneys and public relations firms and professionals to assume the unchecked role of 'private prosecutors' who seek to exercise all of the consequential power of actual prosecutors and none of the ethical, duty-bound responsibilities to seek justice, fairness, transparency and truth – even, and perhaps especially, when it comes to exonerating someone from serious false and fabricated allegations....

[Doc. No. 1] at 5-6 ¶¶8-10.

As reflected in these statements, other allegations in the Complaint and written submissions,[16] Fairfax was primarily motivated to bring this action for reasons other than vindicating his narrowly circumscribed legal rights against NYPR, as further reflected in the Complaint's failure to state *in haec verba,* as required under Virginia defamation law, the allegedly defamatory statements made by Harris-Perry herself, *see Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (Va. 2003) (citing *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200 (Va. 1939)), or as discussed above, facts that make plausible that any statements were made with actual malice. Rather, the primary focus of the Complaint is not why NYPR, as opposed to his accusers, engaged in actionable conduct under applicable law, or how Fairfax has been injured by the Broadcast, but rather why his accusers' allegations should be considered false and he has been treated unfairly as a result of those accusations. In that regard, much of the Complaint recites in detail the substance of CBS's interview with Taylor and Watson, almost none of which was repeated in the Broadcast, and why his accusers' descriptions should not be believed, together with Fairfax's previously filed, and rejected as inadequate, allegations against CBS (which has no

---

[16] For example, the vast majority of the Plaintiff's Opposition to the Defendant's Motions is simply language taken from the Complaint, without any cogent legal theory as to why those conclusory allegations are adequate.

organizational relationship to New York Public Radio).[17] The Complaint also delves into matters totally extraneous to his claim against NYPR, such as his overall views concerning the unfairness of such accusations against a public figure such as himself by "private prosecutors," with references to certain current events such as the #MeToo movement, prosecutorial misconduct, former U.S. Senator Al Franken, Supreme Court Justice Brett Kavanaugh and wrongful convictions. [Doc. No. 1] at 6, 7 n.7, 8 n.8, 45-56, 85-105. The clear primary purpose of the Complaint was simply to use the Broadcast (issued by a New York company) as an opportunity to publicize (in Virginia) Fairfax's claim of innocence, attack the credibility of his accusers (whom he has not sued), publicize his views concerning media unfairness and discourage others from reporting on nothing more than the fact that such accusations have been made.[18]

In sum, Fairfax's action against NYPR was meritless, unreasonable, and without any substantial basis in law or fact, and motivated by reasons other than obtaining relief against NYPR based on a good faith, fact based belief that it had made actionable defamatory statements against him. The Court therefore concludes that an award of attorney's fees is warranted and necessary under the Virginia anti-SLAPP statute.[19]

---

[17] As NYPR points out, "the Complaint cuts and pastes no fewer than 182 paragraphs from the CBS lawsuit..." [Doc. No. 24] at 1.

[18] This conclusion is underscored by NYPR's unchallenged claim that it offered Fairfax three opportunities to have his comments on the interview published. *See* [Doc. 21] at 19; [Doc. No. 21-1] (Tuttle Declaration); [Doc. 21-14] at 4 ("We've reached out to lieutenant governor Justin Fairfax's office for comment but have yet to hear back, if we do get a response [sic] will be posted at thetakeaway.org"); [Doc. No. 21-17]; [Doc. No. 1] at 71 ¶ 180. Similarly, the Court finds nothing mitigating or material in Fairfax's claim that the filing of this action was necessitated by the applicable statute of limitations. *See* [Doc. No. 1] at 2 n.1.

[19] Although fees are not warranted by an imbalance in the financial resources of the parties, the Court notes the more limited resources of the non-profit NYPR, and the likely financial effect of this litigation, as compared to CBS.

## V. Conclusion

For the above reasons, it is hereby

ORDERED that the Defendant's Motion to Dismiss [Doc. No. 20] be, and the same hereby is, GRANTED; it is further

ORDERED that this action be, and the same hereby is, DISMISSED WITH PREJUDICE; and it is further

ORDERED that the Defendant's Motion for Attorney's Fees and Costs [Doc. No. 23] be, and the same hereby is, GRANTED, and that within 21 days, Defendant submit its application for reasonable fees and expenses associated with this litigation, with supporting materials, with any opposition to be filed within 14 days thereafter, and any reply within seven days thereafter.

The Clerk of the Court is directed to forward copies of this Order to all counsel of record.

/s/

Anthony J. Trenga
Senior United States District Judge

April 4, 2023
Alexandria, Va.

17