**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JUSTIN E. FAIRFAX<br>8106 Guinevere Drive<br>Annandale, Virginia 22003, | ) <br>) <br>) <br>) | |
| *Plaintiff,* | ) <br>) | |
| v. | ) <br>) | |
| NEW YORK PUBLIC RADIO<br>160 Varick Street<br>New York, New York 10013, | ) <br>) <br>) <br>) | Case No.   1:22-cv-00895 |
| WNYC<br>160 Varick Street<br>New York, New York 10013, | ) <br>) <br>) <br>) | |
| *Defendants.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S APPLICATION FOR**
**REASONABLE ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**I.   Background and Procedural History**.................................................................. 1

**II.  Analysis of Reasonable Attorneys' Fees and Costs** ........................................... 3

    1.   <u>Legal Standard</u> .......................................................................................... 3

    2.   <u>Calculating the Lodestar Fee</u> .................................................................. 5

        A.  The Rates per Attorney are Reasonable ............................................. 5

        B.  Applying the *Johnson* Factors ........................................................... 7

    3.   <u>Other Costs</u>............................................................................................. 13

**III. Conclusion** ....................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Cases**

*ABLV Bank v. Ctr. For Advanced Def. Stud. Inc.*,
   No. 14-cv-1118, 2015 WL 12517012 (E.D. Va. Apr. 21, 2015) ............................................11

*Blum v. Stenson*,
   465 U.S. 886 (1984).............................................................................................................3, 8, 9

*Brinn v. Tidewater Transp. Dist. Comm'n*,
   242 F.3d 227 (4th Cir. 2001) .......................................................................................................3

*Castel v. Advantis Real Est. Servs. Co.*,
   2008 U.S. Dist. LEXIS 61318 (E.D. Va. Aug. 8, 2008).......................................................7, 8, 9

*Clifford v. Trump*,
   No. CV1806893, 2018 WL 6519029 (C.D. Cal. Dec. 11, 2018).............................................12

*Coward v. Robinson*,
   No. 110CV147, 2017 WL 5195868 (E.D. Va. Nov. 9, 2017) .....................................................3

*Doe v. Chao*,
   435 F.3d 492 (4th Cir. 2006) .......................................................................................................4

*E.E.O.C. v. Serv. News Co.*,
   898 F.2d 958, 966 (4th Cir. 1990) ...............................................................................................4

*Fairfax v. CBS Corp.*,
   2 F.4th 286 (4th Cir. 2021) ........................................................................................................11

*Flanagan v. Pittsylvania Cnty., Va.*,
   No. 19-cv-00413, 2020 WL 2754754 (W.D. Va. May 27, 2020).............................................11

*Gomez v. Seoul Gool Dae Inc.*,
   434 F. Supp. 3d 381 (E.D. Va. 2020) ..........................................................................................5

*Herring Networks, Inc. v. Maddow*,
   No. 19-CV-1713, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021)..................................................12

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ...............................................................................................3, 4, 7

*Open Source Sec., Inc. v. Perens*,
   No. 17-CV-04002, 2018 WL 2762637 (N.D. Cal. June 9, 2018),
   *aff'd*, 803 F. App'x 73 (9th Cir. 2020).....................................................................................12

*Philpot v. Indep. J. Rev.*
    2021 U.S. Dist. LEXIS 239011 (E.D. Va. Nov. 30, 2021) ....................................................3, 4

*Richardson v. William Sneider & Assocs., LLC*,
    No. 12CV25, 2012 WL 3525625 (E.D. Va. July 24, 2012),
    *R. & R. adopted*, No. 12CV25, 2012 WL 3525621 (E.D. Va. Aug. 14, 2012) .........................3

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009) ...............................................................................................3, 5

*Rum Creek Coal Sales, Inc. v. Caperton*,
    31 F.3d 169 (4th Cir. 1994) ........................................................................................................3

*Sandbeck v. Reyes*,
    No. 11CV0761, 2012 WL 1339421 (E.D. Va. Apr. 17, 2012) ...................................................4

*Torres-Baez v. Giovenco-Montano*,
    No. 20CV580, 2022 WL 15482678 (E.D. Va. Oct. 4, 2022),
    *R. & R. adopted*, No. 20-CV-580, 2022 WL 14975888
    (E.D. Va. Oct. 26, 2022) .............................................................................................................4

*Trimper v. City of Norfolk Va.*,
    846 F. Supp. *1295* (E.D. Va. 1994), *aff'd* 58 F.3d 68 (4th Cir. 1995).......................................4

*Vienna Metro LLC v. Pulte Home Corp.*,
    786 F. Supp. 2d 1090 (E.D. Va. 2011) .......................................................................................5

*Wynn v. Chanos*,
    No. 14-CV-04329, 2015 WL 3832561 (N.D. Cal. June 19, 2015),
    *aff'd*, 685 F. App'x 578 (9th Cir. 2017) ...................................................................................12

**Statutes**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1

Fed. R. Civ. P. 54(d)(2)...............................................................................................................4

Va. Code § 8.01-223.2 ............................................................................................................1, 3

42 U.S.C. § 1988(b) ....................................................................................................................4

Pursuant to the Court's April 4, 2023 Order granting the motion to dismiss and the motion for attorneys' fees and costs, ECF No. 42, of Defendant New York Public Radio ("NYPR"), by and through its undersigned counsel, NYPR respectfully submits this Memorandum of Law in Support of its Application for Reasonable Attorneys' Fees and Costs.

## I.  Background and Procedural History

Plaintiff Justin Fairfax filed the Complaint in this action on August 6, 2022—the day the statute of limitations was set to expire—asserting claims for defamation and intentional infliction of emotional distress under Virginia law.  ECF No. 1.  The claims were based on an episode of an NYPR radio show, *The Takeaway*, that discussed two women's highly publicized allegations of sexual assault against Fairfax.  *Id*. at 1–2.  Fairfax filed the Complaint despite NYPR previously explaining that its reporting was protected by the First Amendment.  Declaration of Andrew M. Levine ¶ 5 (Apr. 25, 2022) ("Levine Decl.").  He demanded $35,000,000 in compensatory damages, as well as punitive damages, and expenses and costs, including attorneys' fees.  ECF No. 1 at 111.  Fairfax also sought an "injunction prohibiting NYPR from disseminating, distributing, or publishing any footage or statements that are judicially determined to be defamatory."  *Id*.

On October 25, 2022, NYPR filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and a motion for attorneys' fees and costs pursuant to Virginia's anti-SLAPP statute, Va. Code § 8.01-223.2.  ECF Nos. 21, 24.  On December 9, 2022, the Court heard oral argument on both motions, and, on April 4, 2023, the Court granted both motions.  ECF No. 42.

The Court concluded that Fairfax's action against NYPR was "meritless, unreasonable, and without any substantial basis in law or fact."  ECF No. 42 at 16.  Fairfax was "on clear notice that this action had no prospects for success" because the Fourth Circuit rejected similar claims in 2021 when Fairfax sued CBS for reporting on the same allegations.  ECF No. 42 at 14.

1

Despite this knowledge, Fairfax filed a 111-page, 290-paragraph Complaint with no fewer than 182 paragraphs copied and pasted directly from the failed Complaint against CBS.  ECF No. 21 at 1; ECF No. 1.

Parsing through the Complaint and researching the legal issues necessitated hours of work by counsel to address accurately and adequately the voluminous Complaint and to formulate a successful defense.  NYPR therefore requests that the Court award $237,476.50 in reasonable attorneys' fees (as reflected in the below chart) and $2,446.96 in costs, for the labors to obtain the requested relief.

| Debevoise Fees: | | |
| --- | --- | --- |
| **Category** | **Hours** | **Attorneys' Fees** |
| Initial Case Assessment | 32.2 | $19,573.00 |
| Motion to Dismiss | 266.6 | $132,415.00 |
| Motion for Attorneys' Fees | 80 | $40,065.25 |
| Oral Argument | 73.9 | $37,115.50 |
| Discovery Plan | 13.9 | $8,307.75 |
| **Total:** | 466.6 | $237,476.50 |

2

**II.      Analysis of Reasonable Attorneys' Fees and Costs**

      1.      <u>Legal Standard</u>

The Court already held, pursuant to the Virginia anti-SLAPP statute, Va. Code § 8.01-223.2, that NYPR is entitled to its reasonable fees and costs for having to defend against Plaintiff's meritless and unreasonable Complaint.  ECF No. 42 at 16.[1]  In calculating an award of attorneys' fees, a court must first "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Philpot v. Indep. J. Rev.* 2021 U.S. Dist. LEXIS 239011, at *4 (E.D. Va. Nov. 30, 2021) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  The Court must consider whether the rate is reasonable given the "prevailing market rates in the relevant community, which is understood to be the community within the jurisdiction where the action is tried." *Philpot*, U.S. Dist. LEXIS 239011, at *5 (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (internal quotations omitted).

The Court's analysis of the reasonableness of the hours worked and the billable rate should be guided by the 12 factors cited in *Philpot*, U.S. Dist. LEXIS 239011, at *4–5, as originally set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors include:

---

[1]      NYPR may recover attorneys' fees irrespective of its undersigned counsel representing it in this matter on a pro bono basis.  *See Coward v. Robinson*, No. 110CV147, 2017 WL 5195868, at *3 (E.D. Va. Nov. 9, 2017) (quoting *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234–35 (4th Cir. 2001) ("[T]he Fourth Circuit has recognized that 'entities providing pro bono representation may receive attorney's fees…'"); *see also Blum v. Stenson*, 465 U.S. 886, 893 (1984) (award of attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976 after a successful civil rights action should not vary depending on whether the prevailing party was represented by private counsel or on a pro bono basis); *Richardson v. William Sneider & Assocs., LLC*, No. 12CV25, 2012 WL 3525625, at *10 (E.D. Va. July 24, 2012), *R. & R. adopted*, No. 12CV25, 2012 WL 3525621 (E.D. Va. Aug. 14, 2012) (prevailing party's request for attorneys' fees after default judgment under the Fair Debt Collections Practices Act was not barred simply because the lawyer worked for Legal Aid and did not charge a fee).

(1) the time and labor expended;

(2) the novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for similar work;

(6) the attorney's expectations at the outset of the litigation;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount in controversy and the results obtained;

(9) the experience, reputation and ability of the attorney;

(10) the undesirability of the case within the legal community in which the suit arose;

(11) the nature and length of the professional relationship between the attorney and client; and

(12) attorney's fee awards in similar cases.

488 F.2d at 717–19.

"While these factors must guide the analysis, there is no strict formula the Court is required to follow." *Philpot*, U.S. Dist. LEXIS 239011, at *4–5 (citing *Trimper v. City of Norfolk Va.*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994), *aff'd* 58 F.3d 68 (4th Cir. 1995). Additionally, "[a] court is not required to comment on every factor, only those that are relevant." *Torres-Baez v. Giovenco-Montano*, No. 20CV580, 2022 WL 15482678, at *3 (E.D. Va. Oct. 4, 2022), *R. and R. adopted*, No. 20-CV-580, 2022 WL 14975888 (E.D. Va. Oct. 26, 2022) (ruling on a motion for attorneys' fees under 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2)). Nor does the Court "need [to] address all twelve factors independently, because 'such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Sandbeck v. Reyes*, No. 11CV0761, 2012 WL 1339421, at *2 (E.D. Va. Apr. 17, 2012) (analyzing a motion for attorneys' fees under Fed. R. Civ. P. 54(d)(2)). "Moreover, as

4

repeatedly noted by the Fourth Circuit, the most critical factor in determining reasonableness of a fee award is the degree of success obtained." *Philpot*, U.S. Dist. LEXIS 239011, at *6 (citing *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) (internal quotations omitted)).

      2.       <u>Calculating the Lodestar Fee</u>

      A.      The Rates per Attorney are Reasonable

When conducting a lodestar calculation, the first step is to determine if the hourly rates applied by the attorneys are reasonable based on evidence of the "prevailing market rate." *Robinson*, 560 F.3d at 244.  In order to determine what the reasonable rates would be in the Eastern District of Virginia's market, courts utilize the *Vienna Metro* Matrix (the "Matrix"), established in *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1090 (E.D. Va. 2011); *see Gomez v. Seoul Gool Dae Inc.*, 434 F. Supp. 3d 381, 385 (E.D. Va. 2020) ("To this end, courts in the Eastern District of Virginia employ the *Vienna Metro* Matrix.").  Of the twelve *Philpot* factors, the Matrix calculation considers "'factors (3) skill required, (5) customary fee, (9) the experience, reputation and ability of the attorney, and (12) fees awards in similar cases by providing a stable and consistent rate' for northern Virginia attorneys, 'based on their skill in commercial litigation cases and years of experience.'" *Id*.  (internal citations omitted).

The below chart provides the hourly rates from the Matrix based on an attorney's years of experience working in the legal industry:

5

| Vienna Metro Matrix: | |
| --- | --- |
| **Years-Experience ("YE")** | **Amount** |
| 1-3 YE | $250-4435 |
| 4-7 YE | $350-$600 |
| 8-10 YE | $465-$640 |
| 11-19 YE | $520-$770 |
| 20+ YE | $505-$820 |

NYPR is requesting the midpoint amount for each range for the attorneys that worked on this case, as reflected in the below chart. *See* Levine Decl. ¶ 15–22.

| Requested Rates Per Attorney: | | |
| --- | --- | --- |
| **Debevoise Attorney** | **Years-Experience** | **Hourly Rate** |
| Jonathan R. Tuttle | 31 YE | $662.50 |
| Andrew M. Levine | 21 YE | $662.50 |
| Jared I. Kagan | 13 YE | $645.00 |
| Matthew Petrozziello | 8 YE | $552.50 |
| Christopher M. Carter | 4 YE | $475.00 |
| Naomi Perla | 2 YE | $342.50 |
| Emily Morgan | 1 YE | $342.50 |

The midpoint rates that NYPR seeks do not account for inflation over the last 12 years, since the Matrix's adoption in 2011. These rates also are substantially below rates ordinarily charged by Debevoise and similar law firms in the Washington D.C. and Virginia area. *See* Levine Decl. ¶ 16. Accordingly, NYPR respectfully submits that the requested rates are reasonable.

        B.      Applying the *Johnson* Factors

        (1)      The Time and Labor Expended

The total number of attorney hours for which NYPR is seeking its fees in connection with this matter is 466.6, broken down as follows:

- 32.2 hours for initial case assessment and communications with opposing counsel;

- 266.6 hours to research and fully brief the motion to dismiss;

- 80.0 hours to research and fully brief the motion for attorneys' fees and costs;

- 73.9 hours to prepare for and attend the oral argument; and

- 13.9 hours to engage with Plaintiff's counsel and to prepare and file the joint discovery plan, pursuant to the schedule set by the Court.

Levine Decl. ¶ 27.

The time and labor expended on this matter is reasonable for various reasons, including Fairfax's filing of a voluminous Complaint, the need for oral argument on the two motions filed by NYPR, and the parties' initial engagement in discovery. In addition, the Court can find the calculated hours reasonable based on the fact that the attorneys had "recorded billing entries on a daily basis and identified the amount of time expended, the tasks performed, and the costs incurred." *Castel v. Advantis Real Est. Servs. Co.*, 2008 U.S. Dist. LEXIS 61318, at *8 (E.D. Va. Aug. 8, 2008). The Court can also consider where counsel "reduc[es] its normal hourly rates

and cut[s] excessive or unnecessary work performed as well as other billable time in the appropriate circumstances." *Id.*[2]

In support of its fee request, NYPR is providing a spreadsheet, attached as Exhibit A to the Declaration of Andrew M. Levine, detailing time and effort expended on this matter. Based on this spreadsheet, the lodestar fee for this case is $237,476.50 given the reasonable number of hours and reasonable rates presented above. Levine Decl. ¶ 27.

(2)    The Novelty and Difficulty of the Questions Raised

The Supreme Court has held that the "'novelty and complexity of the issues' are generally reflected in the number of recorded billable hours." *Castel*, 2008 U.S. Dist. LEXIS 61318, at *7–8 (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). While the issues in this matter are not necessarily novel, the motion to dismiss and motion for attorneys' fees and costs were not typical undertakings, making the issues complex. *Id.* at *8.

The motion for attorneys' fees was premised on Virginia's anti-SLAPP statute. As the Court acknowledged, "[t]he Supreme Court of Virginia has not yet interpreted," which necessitated research into the application of similar anti-SLAPP statutes in other jurisdictions. ECF No. 42 at 11. Additionally, the defamation issues required significant research into the applicability of the law to the 111-page, 290-paragraph Complaint.

---

[2]    As explained in the Levine Declaration (¶ 25), this application does not include time spent on this matter by paralegals, research librarians, or our managing attorney' office, even though Debevoise customarily charges for the time of those professionals. The application also does not include time spent cite checking briefs, preparing *pro hac vice* applications, preparing a motion for a continuance of the oral argument that was scheduled the day before Thanksgiving and was necessitated by Fairfax's refusal to agree to a reasonable adjournment, and the time spent preparing this application (even though NYPR would be entitled to recover those fees, too). *See E.E.O.C. v. Serv. News Co.,* 898 F.2d 958, 966 (4th Cir. 1990) (parties may recover costs related to preparing fee petitions).

(3)      The Skill Required to Properly Perform the Legal Services
         Rendered

The Supreme Court in *Blum* held that "in general any required special skill or experience is reflected in the reasonableness of the hourly rates," which is "to be calculated according to the prevailing market rates in the relevant community." *Castel*, 2008 U.S. Dist. LEXIS 61318, at *9 (citing *Blum*, 465 U.S. at 898, 895) (internal quotations omitted). As explained above, the hourly rates are reasonable and fall within the range provided in the Matrix, which is frequently used to calculate attorneys' fees in this District. As also discussed above, this matter required a high level of skill to address thoroughly the 290-paragraph Complaint. Two of the lead attorneys on the matter, Andrew Levine and Jared Kagan, both have significant experience litigating defamation cases. *See* Levine Decl. ¶ 14, 18.

The motion for attorneys' fees also required considerable legal work since fees have not previously been awarded under the Virginia anti-SLAPP statue. Counsel for NYPR possessed the skills necessary to effectively work on this issue. *See* Levine Decl. ¶ 13–22.

(4)      The Attorneys′ Opportunity Costs in Pressing the Instant Litigation

Counsel for NYPR took this case on a pro bono basis. That means that the many hours that counsel spent on this matter were unavailable for billable client work, for which counsel charges materially higher rates than the rates requested in connection with this application. *See* Levine Decl. ¶ 16.

(5)      The Customary Fee for Like Work

The requested rates for attorneys' fees are consistent with the Matrix, which provides a basis for calculating fees for attorneys at particular year-experience levels in this District. As discussed above, the requested rates are reasonable because, among other reasons, they are only

9

the midpoint of the ranges provided by the Matrix, which does not account for inflation or for the ordinary rates of Debevoise and similar firms. *See* Levine Decl. ¶ 16.

(6)    The Attorneys' Expectations at the Outset of the Litigation

Counsel took this case on a pro bono basis with the understanding that attorneys could not devote the time spent on this matter to billable client matters. Counsel was aware of the Virginia anti-SLAPP statute and understood that the Court could award reasonable fees and costs for defending this meritless lawsuit. Counsel anticipated the need to file a motion to dismiss and a motion for attorneys' fees and costs. Accordingly, the tasks involved in this matter were consistent with counsel's expectations. *See* Levine Decl. ¶ 24.

(7)    The Time Limitations Imposed by the Client or Circumstances

As noted above, this matter was taken on a pro bono basis. The time that counsel devoted to this matter therefore impacted time otherwise available to work on billable matters.

(8)    The Amount in Controversy and the Results Obtained

The amount in controversy included a $35,000,000 demand for compensatory damages, in addition to punitive damages, and expenses and costs, including attorneys' fees. ECF No. 1 at 111. NYPR is a nonprofit with limited resources, so this demand, if successful, would have been highly material and problematic for NYPR. NYPR ultimately obtained complete success in the dismissal of this case and the award of fees and costs.

(9)    The Experience, Reputation and Ability of the Attorney

As detailed in the Levine Declaration, Debevoise has been recognized as a leading firm and each member of the legal team possesses the experience necessary to represent NYPR. *See* Levine Decl. ¶ 13–22.

10

(10)     The Undesirability of the Case within the Legal Community in which the Suit Arose

The Court awarded NYPR's motion for attorneys' fees under the anti-SLAPP statute because the statute "was enacted for the purposes of protecting free speech." ECF No. 42 at 10. "At its core, the Virginia anti-SLAPP statue is intended to ensure that Virginia courts are not used to silence political discourse protected by the First Amendment, to 'protect[] the public interest in a free flow of information to the people concerning public officials,' and to 'protect against self-censorship.'" *Id.* at 10 (citing *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021)). As the Fourth Circuit observed in the CBS litigation, "[g]enerally speaking, anti-SLAPP statutes aim to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax*, 2 F.4th at 296; *accord Flanagan v. Pittsylvania Cnty., Va.*, No. 19-cv-00413, 2020 WL 2754754 at *10 n.6 (W.D. Va. May 27, 2020) (quoting *ABLV Bank v. Ctr. For Advanced Def. Stud. Inc.*, No. 14-cv-1118, 2015 WL 12517012, at *2 (E.D. Va. Apr. 21, 2015)) ("[T]he purpose of so-called 'Anti-SLAPP' laws like Virginia's is to protect [parties] from 'the chilling effect' of 'meritless civil action[s].'").

The Court appropriately found that "Fairfax was primarily motived to bring this action for reasons other than vindicating his narrowly circumscribed legal rights against NYPR." ECF No. 42 at 15. This clearly indicates the undesirability of the case within the legal community in which the suit arose.

(11)     The Nature and Length of the Professional Relationship Between the Attorney and Client

NYPR is a longstanding pro bono client of Debevoise, and Debevoise team members Andrew Levine and Jared Kagan both have represented NYPR for more than a decade. *See* Levine Decl. ¶ 2.

11

(12)   Attorneys' Fees Awards in Similar Cases

NYPR is not aware of a court in this District that previously has awarded attorneys' fees under the Virginia anti-SLAPP statute.  Awards of attorneys' fees and costs under other states' anti-SLAPP statutes are generally consistent with the amount that NYPR is requesting here.  For example:

- In *Open Source Sec., Inc. v. Perens*, No. 17-CV-04002, 2018 WL 2762637, at *1 (N.D. Cal. June 9, 2018), *aff'd*, 803 F. App'x 73 (9th Cir. 2020), after making a downward adjustment, the court awarded the defendant $259,900.50 in fees and $2,403.12 in costs under the California anti-SLAPP statute after granting the defendant's motion to dismiss claims for defamation.

- In *Clifford v. Trump*, No. CV1806893, 2018 WL 6519029, at *1 (C.D. Cal. Dec. 11, 2018), the court awarded under the Texas anti-SLAPP statute fees and costs of $292,052.33 after a 25% percent reduction for reasonableness following dismissal of the plaintiff's defamation claim.

- In *Wynn v. Chanos*, No. 14-CV-04329, 2015 WL 3832561, at *1, 6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017), the court granted the defendant's motion for attorneys' fees under California's anti-SLAPP statute and awarded $390,149.63 in attorneys' fees (after a 25% reduction for reasonableness) and $32,231.23 in costs after the defendant's successful motion to dismiss and motion to strike a defamation action.

- The court in *Herring Networks, Inc. v. Maddow*, No. 19-CV-1713, 2021 WL 409724, at *1, 11 (S.D. Cal. Feb. 5, 2021) granted the defendants' attorneys' fees under

12

California's anti-SLAPP law after defendants' successful motion to strike a defamation action, reducing the total attorney hours worked by approximately twenty hours and ultimately awarding fees of $247,667.50 and costs of $10,724.36.

### 3.   Other Costs

NYPR incurred costs for duplicating and travel for the oral argument on NYPR's motions and seeks an award of $2,446.96 for those costs.  *See* Levine Decl. ¶ 28.

## III.   Conclusion

For the foregoing reasons, NYPR respectfully requests that the Court award reasonable attorneys' fees in the amount of $237,476.50 and costs in the amount of $2,446.96.

Dated: April 25, 2023

/s/ Jonathan R.  Tuttle
Jonathan R.  Tuttle, Va.  Bar No.  34465
Debevoise & Plimpton LLP
801 Pennsylvania Ave, NW
Suite 500
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
jrtuttle@debevoise.com

Andrew M.  Levine*
Jared I.  Kagan*
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
Tel: (212) 909-6000
Fax: (212) 909-6836
amlevine@debevoise.com
jikagan@debevoise.com

*Counsel for Defendant*
*New York Public Radio*

*Admitted *pro hac vice*

13

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 25th day of April, 2023, I caused a copy of the

foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which

will then send a notification of such filing to all interested parties.

/s/  Jonathan R.  Tuttle
Jonathan R.  Tuttle, Va.  Bar No.  34465
Debevoise & Plimpton LLP
801 Pennsylvania Ave, NW
Suite 500
Washington, DC 20004
Tel: (202) 383-8000
Fax: (202) 383-8118
jrtuttle@debevoise.com

*Counsel for Defendant*
*New York Public Radio*