IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| JUSTIN FAIRFAX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 1:22-cv-895 (AJT/IDD) |
| | ) | |
| NEW YORK PUBLIC RADIO | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Before the Court is Defendant New York Public Radio's ("NYPR") Petition for Attorneys' Fees and Costs, [Doc. No. 43] (the "Petition"), and supplement thereto, [Doc. Nos. 58, 59]. The Court previously granted NYPR's request for attorneys' fees pursuant to Virginia's anti-SLAPP statute, [Doc. No. 42], which was affirmed by the Fourth Circuit on appeal, and the Court now must only decide the amount of attorneys' fees to be awarded. *See* 21 Va. Code § 8.01-223.2 ("Any person who has a suit against him dismissed . . . pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs."). Central to the Court's consideration of what amount is appropriate is the *pro bono* status of NYPR's counsel, disclosed to the Court for the first time in the Petition, *see* [Doc. No. 44] at 9, that is, only after it granted NYPR's motion to award fees, that decision was affirmed on appeal, and the case was remanded to the Court from the Fourth Circuit.

The financial impact on NYPR was a consideration in the Court's decision to award fees under the Anti-SLAPP statute, *see Fairfax v. CBS Broadcasting, Inc.*, 534 F. Supp. 3d 581, 602 (E.D. Va. Feb. 11, 2020), *aff'd*, 2 F.4th 286 (4th Cir. 2021); NYPR explicitly referenced that

1

consideration in its motion for fees under the Anti-SLAPP statute [Doc. No. 24] at 1; [Doc. No. 24-2]; and the Court granted the motion for fees under the assumption that NYPR experienced a financial loss as a result of Plaintiff's Complaint. *See* [Doc. No. 42] at 16 n.9 (considering "the more limited resources of the non-profit NYPR, and the likely financial effect of this litigation" when determining whether to award fees). While its counsel's *pro bono* status does not preclude an award of attorneys' fees, *see Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234-35 (4th Cir. 2001), the assumed financial impact on NYPR was a material consideration for the Court when deciding the attorneys' fees motion; and the failure to timely advise the Court of that status was a material omission in NYPR's motion for fees. *See CBS Broadcasting*, 534 F. Supp. 3d at 602 ("Court[s] have also sometimes looked to whether an award of attorney's fees is necessary to address an imbalance in resources or to protect a defendant from a plaintiff with an unfair financial advantage."). Given the failure to timely disclose counsel's *pro bono* status, the Court has considered whether to vacate the Court's order granting the motion for attorneys' fees in its entirety, or whether to consider that omission and counsel's *pro bono* status in connection with the amount of fees to be awarded and the other relevant factors and considerations and for the reasons stated in granting motion for fees, other than the financial impact on NYPR, will consider an appropriate award of fees.

The Court has reviewed NYPR's fee petitions in detail, aspects of which would warrant a large fee reduction, even without considering counsel's delayed disclosure of its *pro bono* status.[1]

---

[1] In doing so, the Court has considered the so-called "*Johnson* factors," set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); s*ee also McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), including the appropriate "lodestar," adjusted for such factors as such as:

      (1) the time and labor expended;
      (2) the novelty and difficulty of the questions raised;
      (3) the skill required to properly perform the legal services rendered;
      (4) the attorneys' opportunity costs in pressing the instant litigation;
      (5) the customary fee for like work;
      (6) the attorneys' expectations at the outset of the litigation;

For example, NYPR spent an excessive amount of time on this matter, especially in light of its early dismissal.[2] Much of its supporting fee application reflects excessive block-billing, with multiple layers of lawyers, engaged in what appear to be duplicative activities, often with imprecise and vague diary entries.[3] The Court has also considered that NYPR's counsel no doubt understood when it accepted this case *pro bono* that it may not receive any payment for its services. [Doc. No. 59] ¶ 14. As referenced above, the financial impact on NYPR was not what the Court assumed, and while its willingness to represent NYPR on a *pro bono* basis is commendable, counsel's failure to timely disclose its *pro bono* status, coupled with statements in support of its motion that are inconsistent with that status, deprived the Court of material information pertaining to its motion and warrants a reduction in any award that it would otherwise give. The Court has also considered what award would sufficiently deter Fairfax from filing similar claims in the future, and any imbalance in resources between the parties reflected in the record. Finally, the

---

(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorneys' fees awards in similar cases.

*See Minnix v. Sinclair Television Grp., Inc.*, No. 7:23-cv-91, 2024 WL 1885568, at *5 (W.D. Va. Jan. 24, 2024), *R&R adopted*, at Doc. No. 29 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009).

[2] For example, NYPR seeks $40,065.25 for the preparation of the motion for attorneys' fees and costs itself, [Doc. No. 44-2] at 8, with more than 80 hours on that motion, over 35 of those hours relating to legal research about attorneys' fees alone. *See id.* Similarly, NYPR also seeks an additional $132,415.00 in fees for 266.60 hours of researching and briefing the motion to dismiss. [Doc. No. 44-1] at 7; [Doc. No. 44-2]. An additional 205.00 hours, for $91,929.25 in legal fees, were spent in preparing the appellate materials in this matter, even though there was substantial overlap between the issues presented at the motion to dismiss and on appeal. A significant amount of attorney time also went into case coordination between the seven different attorneys staffed on the case, including two partners, one counsel, three associates, and a law clerk. *See Tancredi v. Metro Life Ins. Co.*, No. 00Civ.5780, 2003 WL 22299203, at *4 (S.D.N.Y. Oct. 7, 2023).

[3] It is not practical, or possible, for the Court to review each diary entry and determine the exact number of hours that should be reduced for each task to remove excessive or duplicative labor, particularly in light of the frequent block-billing, making it impossible for the Court to discern whether the time billed was reasonable in light of the work performed. For example, 19 entries from the first Petition alone include the task description "emails with Debevoise team re next steps" or a functional equivalent thereof. [Doc. Nos. 44-2]. Multiple entries from different attorneys provide vague references to drafting, researching, or reviewing of the appellate brief without providing any details about a particular section or research topic that can justify the time spent for these entries. [Doc. No. 59-1] at 3-4; *see also* [Doc. No. 44-2] at 5 (billing 8.30 hours for "[r]eview and analysis of relevant litigation materials; drafting of motion to dismiss outline; researching of relevant arguments").

Court has considered fees awarded in similar cases—including, notably, one involving the same law firm that was also dismissed at the motion to dismiss stage. *See Minnix*, 2024 WL 1885568, at \*5 (awarding $35,554.40 in fees under Virginia's anti-SLAPP statute where counsel secured dismissal of a defamation claim at the motion to dismiss stage, citing that the fees were reduced "due to the overstaffing of principal attorneys, as well as the limited, noncomplex work necessary to receive a final judgment of dismissal so early in the case"). Based on all the relevant facts and circumstances, the Court awards attorneys' fees and costs in the amount of $50,000. Accordingly, it is hereby

**ORDERED** that the Petition for Attorneys' Fees and Costs [Doc. No. 43] be, and the same hereby is, **GRANTED** in part and **DENIED** in part; and Defendant is hereby awarded $50,000 in attorneys' fees and costs.

The Clerk is directed to forward copies of this Order to all counsel of record.

Alexandria, Virginia
February 7, 2025

Anthony J. Trenga
Senior U.S. District Judge

4